**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 19-22013-Civ-WILLIAMS/TORRES

NERVA ALMEIDA,

        Plaintiff,

v.

ANDREW SAUL, Acting Commissioner of
the Social Security Administration,

        Defendant.

_____/

**REPORT AND RECOMMENDATION ON THE PARTIES'**
**CROSS MOTIONS FOR SUMMARY JUDGMENT**

This matter is before the Court on the parties' cross motions for summary judgment filed by Nerva Almeida ("Plaintiff") [D.E. 16] and Andrew Saul, the Acting Commissioner of the Social Security Administration ("Defendant") [D.E. 19] on whether the Administrative Law Judge (the "ALJ") properly weighed the evidence presented in reaching an unfavorable decision. Under the limited standard of review that governs this case, the Court finds that substantial evidence does not support the ALJ's determination. Therefore, Plaintiff's motion for summary judgment [D.E. 16] should be **GRANTED in part**, Defendant's motion for summary judgment [D.E. 19] should be **DENIED**, and this case should be **REMANDED**.[1]

_____

[1]    On May 17, 2019, the Honorable Kathleen Williams referred the parties' cross-motions to the undersigned Magistrate Judge for disposition. [D.E. 5].

## I.      FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was born on March 29, 1966.  She was 45 years old on her alleged disability onset date and 51 years old on her date last insured.  She has a high school education and past relevant work as a postal carrier, a nurse's assistant, and a cemetery salesperson.  Plaintiff alleges that she is disabled because of hypertension, back pain, jaw fractures, migraines, headaches, double vision neuropathy, a pancreatic cyst, and diabetes.  The Social Security Agency denied Plaintiff's application at the initial and reconsideration levels.  Plaintiff then requested a hearing before an ALJ[2] that took place in December 2017 and May 2018.

After considering the record and the testimony of a vocational expert[3] ("VE"), the ALJ issued an unfavorable decision on July 7, 2018.  At step one of the sequential process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of November 17, 2011.  The ALJ determined at step two that Plaintiff had the severe impairments of depression, anxiety, posttraumatic stress disorders, diplopia, diabetes, central vestibule dysfunction, and degenerative disc disease.  The ALJ then found that, through the date last insured, Plaintiff did not have an impairment or combination of

---

[2]      The ALJ in this case was Brian Battles.

[3]      A VE is a specialist in employment and vocational factors that influence employment.  An ALJ may rely on a VE's testimony as the basis for finding that a claimant can find work in the national economy.  The VE in this case was Ray O. Burger.

impairments that met or medically equaled the severity of one of the listed impairments under the Social Security regulations.   Prior to moving to step four, the ALJ concluded that Plaintiff had the following residual functional capacity ("RFC") to perform light work:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can occasionally push and pull and operate foot controls with the bilateral lower extremities.   She can occasionally balance, stoop, kneel, crouch, and crawl.   The claimant can occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds.   She can frequently handle, finger, and reach with the bilateral upper extremities.   The claimant cannot work in hazardous environments such as at unprotected heights or around dangerous machinery or open flames. She must not drive a motor vehicle with respect to performing work-related duties.   She can perform unskilled, simple, routine, and repetitive tasks.   The claimant can work in a low stress job, defined as only making occasional decisions and tolerating only occasional changes in the work setting.   She should have no more than occasional contact with supervisors, coworkers, and the general public with respect to performing work-related duties.   She is limited to jobs that can be performed with the use of the left eye only.

[Tr. 27].

The ALJ then proceeded to step four and determined that Plaintiff could *not* perform her past relevant work as a mail carrier, a nurse's assistant, or a cemetery plot salesperson.   However at step five, the ALJ relied on the testimony of a VE to conclude that Plaintiff could perform at least some jobs available in the national economy – including work as a mail clerk and a general office assistant.   [Tr. 28]. The ALJ therefore found that Plaintiff was not disabled from November 17, 2011 through December 31, 2017.   Following the ALJ's unfavorable decision, Plaintiff requested further review, but the Appeals Council denied that request.   Plaintiff

then filed this action seeking judicial review of the administrative proceedings pursuant to 42 U.S.C. § 405(g).   Accordingly, this action is now ripe for disposition.

## II.        STANDARD OF REVIEW

Judicial review of an ALJ's final decision is limited to an inquiry into whether there is substantial evidence in the record to support the ALJ's findings, and whether the correct legal standards were applied.   *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Kelley v. Apfel*, 185 F.3d 1211, 1212 (11th Cir. 1999).   "Substantial evidence is more than a scintilla, but less than a preponderance.   It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Richardson*, 402 U.S. at 401); *see also Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996)).

In testing for substantial evidence, the court is not to "reweigh the evidence" or "decide the facts anew."   *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178 (11th Cir. 2011) (citing another case).   Instead, so long as the ALJ's findings are supported by substantial evidence, they are conclusive, and we must defer to the ALJ's decision even if the evidence may preponderate against it.   *See Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings."); *Miles*, 84 F.3d at 1400; 42 U.S.C. § 405(g).   However, no presumption of validity attaches to the Commissioner's conclusions of law.   *See*

4

*Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).   The Court also reviews the ALJ's decision to determine whether the correct legal standards were applied. *See Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).   In this respect, "the ALJ has a basic obligation to develop a full and fair record," as a hearing before an ALJ is not an adversary proceeding.   *Id.* (citing another source).

Ultimately, it is the function of the Commissioner to resolve conflicts in the evidence and to assess the credibility of the witnesses.   *See Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971).   It is also the responsibility of the Commissioner to draw inferences from the evidence, and those inferences cannot be overturned if they are supported by substantial evidence.   *See Celebrezze v. O'Brient*, 323 F.2d 989, 990 (5th Cir. 1963).   Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, a court is not to re-weigh the evidence anew. Rather, a court is limited to determining whether the record as a whole contains sufficient evidence to permit a reasonable mind to conclude that the claimant is not disabled.   If a decision is supported by substantial evidence, we must affirm even if the proof preponderates against it.   Therefore, a court's responsibility is to ensure that the proper legal standards were applied.   *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

### III.     *ANALYSIS*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or is expected to last for

5

a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of producing evidence that proves he or she meets this statutory definition. "The social security regulations establish a five-step evaluation process, which is used to determine disability for both SSI and DIB claims" and "[t]hese regulations place[] a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (citing *Spencer v. Heckler,* 765 F.2d 1090, 1093 (11th Cir. 1985)). The steps are followed in order to determine if the claimant is disabled. "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (internal quotation and citation omitted).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. *See* 20 C.F.R. § 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If the ALJ does not make such a finding, then the inquiry ends. *See* 20 C.F.R. § 404.1520(c). At step three, the ALJ compares the claimant's impairments with specific impairments under the regulations that require a finding of disability without further inquiry into the claimant's ability to perform other work. *See Gibson v. Heckler*, 762 F.2d 1516, 1518 (11th Cir. 1985) ("Certain impairments are so severe either when considered alone or in conjunction with other impairments that, if such impairments are proved,

6

the regulations require a finding of disability without further inquiry into the claimant's ability to work."). If the claimant's impairment meets or equals a listed impairment, the claimant's disability is presumed, and benefits are awarded. *See* 20 C.F.R. § 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing past relevant work. If the claimant cannot perform past relevant work, then a prima facie case of disability is established. The ALJ assesses a claimant's RFC at this stage, based on all of the other relevant evidence, to determine the extent of a claimant's ability to work despite the alleged impairments. *See* 20 C.F.R. § 416.945(a)(1). A claimant's RFC is an administrative finding of fact concerning the claimant's maximum remaining capacity to perform work-related physical and mental activities on a regular and continuing basis despite the functional limitations and environmental restrictions imposed by his or her medically determinable impairment(s).

When making this finding, the ALJ is required to identify the limitations and/or restrictions imposed by the claimant's impairments and then assess his or her work-related abilities on a function-by-function basis. Only upon the conclusion of this function-by-function analysis may an ALJ express a claimant's RFC in terms of the exertional levels of work, i.e., sedentary, light, medium, heavy, and very heavy. This leads to step five – the final inquiry – where the burden shifts to the Commissioner to show that there is other work available in the national economy that the claimant can perform. *See* 20 C.F.R. § 404.1520(e)-(f).

On appeal, Plaintiff raises four challenges to the ALJ's decision: (1) that the ALJ failed to establish that there are a significant number of jobs in the national economy, (2) that the ALJ failed to adequately consider Plaintiff's symptoms and allegations of pain, (3) that the weight assigned to two state agency consultants lacks substantial evidence, and (4) that the ALJ improperly assessed the medical evidence as to Plaintiff's treating physicians.   We consider each argument in turn.

### A.   *Substantial Evidence Supports the ALJ's Step Five Finding*

We begin with the question of whether the ALJ failed to establish that there were a significant number of jobs available in the national economy that Plaintiff could perform.   Plaintiff argues that the ALJ's step-five finding lacks substantial evidence because the VE failed to provide specific jobs data for each occupation named in the Dictionary of Occupational Titles ("DOT").   Instead, Plaintiff claims that the VE relied on much broader classifications that break down job occupations into groups.   These are generally referred to as the Standard Occupational Classification ("SOC") categories.

Plaintiff suggests that the problem with the ALJ's decision is that the VE overinflated the number of jobs available in the national economy.   The VE stated, for example, that the national economy had 87,000 mail clerk positions.   Plaintiff claims that this number is inaccurate because that figure includes multiple DOT-coded occupations.   To put it simply, Plaintiff argues that it is unreliable for the VE to testify (and for the ALJ to then rely upon) that the national economy includes 87,000 mail clerk positions because the SOC category states that the figure

is only 86,150 and that even that figure is misleading because it contains 14 other DOT-coded occupations with only one identified as a mail clerk.   Plaintiff complains that the VE made the same mistake when he testified that there were 113,000 general office assistant positions in the national economy when the Bureau of Labor Statistics reports that this figure is only 75,720.   And Plaintiff contends that, even taking that reduced number at face value, the number of jobs for a general office assistant must be lower because that category of jobs includes 7 other DOT-coded occupations.

Plaintiff argues that the ALJ should have recognized this conflict and resolved it because the failure to do so renders the ALJ's decision lacking in substantial evidence.   While Plaintiff concedes that the ALJ questioned the VE on whether his testimony was consistent with the DOT, Plaintiff maintains that the ALJ should have done more because "[t]he failure to discharge this duty means that the ALJ's decision, when based on the contradicted VE testimony, is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1356 (11th Cir. 2018).   Indeed, Plaintiff claims that the ALJ had an "affirmative duty to identify apparent conflicts between the testimony of a Vocational Expert and the DOT and resolve them," and that this "requires more of the ALJ than simply asking the VE whether his testimony is consistent with the DOT." *Id*.   Because the ALJ failed to fulfill his duty and the evidence presented overinflated the number of jobs available in the national economy, Plaintiff concludes that the step-five finding cannot stand and that this case must be remanded for further consideration.

At the fifth step of the sequential process, the Commissioner bears the burden of showing that, in light of a claimant's RFC, a significant number of jobs exist in the national economy that the claimant can perform.   The ALJ is tasked with articulating specific jobs and this must be supported by substantial evidence, not mere intuition or conjecture.   *See Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).   Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country.   *See* 20 C.F.R. § 404.1566(a).   The ALJ, relying on the VE's testimony, then determines whether a specific number of jobs constitute a significant number. *See* 20 C.F.R. § 404.15 12(g).

Plaintiff's argument falls flat because she never raised this issue during the ALJ hearing nor did she question the VE's qualifications.   Plaintiff also never requested that the VE provide any supporting data for his opinion or seek to undermine his opinion with contradictory evidence.   *See Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795 (11th Cir. 2011) (concluding that the ALJ did not err in relying on the VE's testimony in part where the claimant "did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE.").   Undermining Plaintiff's argument even further is the fact that there is no categorical rule – and Plaintiff fails to cite a single case that imposes one – that requires a VE to produce supporting jobs data to corroborate his or her testimony.   *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1156–57 (2019) ("Biestek goes too far in suggesting that the refusal to provide supporting data always interferes

10

with effective cross-examination, or that the absence of such testing always requires treating an opinion as unreliable."). Instead, "a factfinder may conclude that [the VE's] testimony has sufficient indicia of reliability to support a conclusion about whether an applicant could find work," because "an applicant may probe the strength of [the] testimony by asking an expert about (for example) her sources and methods – where she got the information at issue and how she analyzed it and derived her conclusions." *Id.* (citing *Chavez v. Berryhill*, 895 F.3d 962, 969 (7th Cir. 2018)). The reason for this rule is because "[t]he question . . . is not whether the expert's testimony is supported by substantial evidence. It is whether the ALJ's decision is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (citations omitted). And because Plaintiff failed to challenge any component of the VE's testimony during the ALJ hearing and the VE had no duty[4] to reference any underlying jobs data to support his opinion, it is difficult to conclude how the VE's testimony was so unreliable that it lacked substantial evidence.

---

[4]      The Eleventh Circuit has repeatedly held that a VE's failure to provide a comprehensive statistical explanation as to how he arrived at a job figures does not, by itself, render an ALJ's decision lacking in substantial evidence. *See Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."); *Pena v. Comm'r of Soc. Sec.*, 489 F. App'x 401, 403 (11th Cir. 2012) ("[T]he ALJ was entitled to rely upon the VE's testimony without requiring the VE to provide a comprehensive statistical explanation of how he arrived at the reduced job number figures.").

Plaintiff's argument is also unavailing because it suggests that the ALJ was required to independently verify the VE's testimony.    Yet, the Eleventh Circuit has only required an ALJ to resolve conflicts between a VE's testimony and the DOT. *See Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555–56 (11th Cir. 2019) ("[W]e have held that the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT.") (citing *Washington v. Comm'r Soc. Sec.*, 906 F.3d 1353, 1365 (11th Cir. 2018)).    This case does not raise a conflict with the DOT because Plaintiff complains that the number of available jobs is inconsistent with the figures provided from the Bureau of Labor Statistics.[5]    Indeed, Plaintiff raises no issue with the DOT; she merely claims that the SOC categories are too broad to present a reliable indicator for the number of jobs available in the national economy.

Given that Plaintiff's complaint is premised on the government's published reports, the Eleventh Circuit "has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the [Occupational Employment Statistics "OES")] because the "figures in the OES are not part of the SSA's regulatory scheme."    *Webster*, 773 F. App'x at 556 (citing 20 C.F.R. § 404.1566(d)(1), (5)).    Although Plaintiff complains that the Eleventh Circuit's decision in *Webster* is not controlling because it was merely an unpublished decision, it "may nonetheless be cited as persuasive authority."    *United States. v. Rodriguez-Lopez*, 363 F.3d 1134,

---

[5]    This case does not concern Plaintiff's complaints about the DOT because the latter does not even contain job incidence data.

1138 n.4 (11th Cir. 2004); *see also* 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority."). Accordingly, Plaintiff's argument that, the ALJ's step-five finding lacks substantial evidence, lacks merit.

### B.   Substantial Evidence Supports the ALJ's Findings on Plaintiff's Symptoms and Limitations

Plaintiff's second argument is that the ALJ failed to properly evaluate her symptoms and allegations of pain.  The Social Security regulations provide that statements about pain or other symptoms will not alone establish that a claimant is disabled.  *See* 20 C.F.R. § 404.1529(a).   "In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain."  *Wilson*, 284 F.3d at 1225 (citation omitted). An ALJ is not required to accept a claimant's subjective allegations of pain/symptoms and may properly consider the credibility of a claimant when making a determination of disability.  *See id.* at 1225-26.   If an ALJ rejects a claimant's allegations of pain, "he must articulate explicit and adequate reasons for doing so."  *Foote v. Chater*, 67 F.3d 1553, 1561–62 (11th Cir. 1995).

A "clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court."  *Id.* at 1562.   If a disability

is based on subjective evidence and a credibility determination is made against the claimant, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983).   The ALJ is not required to cite "particular phrases or formulations but it cannot merely be a broad rejection" that prevents a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole.  *See Foote*, 67 F.3d at 1561; *Jamison v. Bowen*, 814 F.2d 585, 590 (11th Cir. 1987) ("Broad findings that a claimant lacked credibility and could return to her past work alone are not enough to enable us to conclude that the ALJ considered her medical condition as a whole.").

In reaching a determination, the ALJ may consider the following factors: (1) treatment history, (2) the type, dosage, effectiveness, and side effects of any medications taken, (3) treatment taken other than medications, (4) any other measures used for relief of pain or other symptoms, (5) any precipitating and aggravating factors, (6) medical source opinions, (7) statements by the claimant or others about pain and other symptoms, (8) information about prior work, and (9) evidence of daily activities.  *See* 20 C.F.R. §§ 404.1529(c)(1)-(3), 416.929(c)(1)-(3). But, the ALJ is not required to discuss every aforementioned factor.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005) ("In sum, the ALJ considered Dyer's activities of daily living, the frequency of his symptoms, and the types and dosages of his medications, and concluded that Dyer's subjective complaints were inconsistent

14

with his testimony and the medical record. The ALJ thus adequately explained his reasons").

Here, the ALJ gave an extensive summary of Plaintiff's allegations with respect to the intensity, persistence, and the limiting effects of Plaintiff's symptoms. [Tr. 28].  The ALJ considered for example, Plaintiff's anxiety, depression, head pain, double vision, migraines, dizziness, vertigo, lack of strength, and obesity. Plaintiff nonetheless complains that the ALJ failed to give her allegations additional credibility because, if the ALJ had done so, the ALJ would have reached a RFC with far more limitations.   Plaintiff's argument is unpersuasive because, for the most part, the ALJ credited Plaintiff's allegations in reaching a RFC limited to unskilled, simple, routine, and repetitive work.  [Tr. 32] ("In favor of the claimant   and based on her testimony, the claimant has been limited to work at the light exertional exertion level and additional postural, manipulative, environmental, driving, and visual limitations have been included in the residential functional capacity finding.").   In fact, the ALJ found that, based on Plaintiff's mental health records, Plaintiff should be limited to only occasional contact with supervisors, coworkers, and the general public.

Plaintiff maintains, however, that this determination was inadequate.  But, Plaintiff fails to explain how the ALJ erred when Plaintiff, during the relevant time period, performed activities of daily living, travelled outside the country, and retained some functional abilities despite her impairments.   The ALJ also discussed at length the medical evidence in the record and found that they only supported the

15

restrictions already included in the RFC.   Plaintiff remains steadfast in her belief that the ALJ reached the wrong conclusion.   But, a mere disagreement on the conclusion reached does not mean that the ALJ's decision lacks substantial evidence. Because the Court's limited standard of review does not allow for the re-weighing of evidence, our inquiry is limited to whether substantial evidence in the record as a whole can support the ALJ's findings.   Plaintiff's second argument lacks merit given that standard.

### C.   *Substantial Evidence Supports the Weight Given to Two State Agency Consultants*

Plaintiff's third argument is that the ALJ committed several errors with respect to Plaintiff's RFC determination and the evaluation of two state agency consultants.   An RFC is what a claimant can still do despite his or her limitations and is an assessment based on all the relevance evidence in the record.   An ALJ often considers opinions from medical sources when determining a claimant's RFC because "the final responsibility for deciding these issues is reserved for the Commissioner."   20 C.F.R. § 416.927(e)(2).   The reason the Commissioner is tasked with this determination is because "[g]iving controlling weight to such opinions would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled."   1996 WL 374183, at *2.

16

"'The RFC assessment must first identify the individual's functional limitations or restrictions and assess . . . her work-related abilities on a function by function basis . . . [o]nly after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy.'" *Freeman v. Barnhart*, 220 F. App'x 957, 959 (11th Cir. 2007) (quoting SSR 96–8p, 1996 WL 374184). The Social Security regulations mandate a narrative discussion of "the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis . . . and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." (SSR 96–8p at 6). As such, "[t]he ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." *Freeman*, 220 F. App'x at 960 (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).

In making this determination, "[w]e do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole." *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. 2009) (citing *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (stating that "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision")); *see also Gully v. Astrue,* 2009 WL 1580416 (M.D. Ala. 2009) (finding that an ALJ's failure to "more specifically and explicitly set forth his

17

findings with respect to a claimant's functional limitations and work-related abilities on a function-by-function basis is excusable where it is apparent the ALJ did consider all of the evidence.") (citing *Freeman*, 220 F. App'x at 959–60).

Plaintiff contends that the ALJ's RFC determination lacks substantial evidence because – although he gave "great weight" to two state agency psychologists – he failed to adopt all of their limitations without any explanation. Plaintiff focuses specifically on the opinions of Drs. Annis and Pena where they opined that Plaintiff could perform simple tasks so long as the occupational setting is not fast-paced or quota driven.   Plaintiff alleges that the ALJ failed to include this limitation in his RFC, including other restrictions where Plaintiff suffers from "mood fluctuations," "decrease[s] in concentration," and the need for additional supervision for new and multi-step assignments.   [Tr. 103-109].   Because the ALJ failed to provide a single reason for discounting two state agency psychologists, despite assigning their opinions "great weight," Plaintiff concludes that the Commissioner's step-five burden has not been met.

Plaintiff's arguments are unavailing because – in assigning the opinions of Drs. Annis and Pena "great weight," – the ALJ was not required to adopt every limitation that they identified.   "Although a treating physician's opinion must generally be given substantial weight, the same is not true of a consultative physician."   *Esterlein v. Berryhill*, 2018 WL 3014803, at *4 (M.D. Ala. June 15, 2018).   Instead, state agency consultants are highly qualified specialists who also are experts in Social Security disability evaluations, and their opinions may be entitled to great

weight if the evidence supports them.   *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).   An ALJ's consideration of a non-examining physician also "depends, among other things, on the extent to which it is supported by clinical on the extent to which it is supported by clinical findings and is consistent with other evidence." *Jarrett v. Comm'r of Soc. Sec.*, 422 F. App'x 869, 873 (11th Cir. 2011) (citing 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158, 1160 (11th Cir. 2004) (holding that the ALJ did not err in relying on a consulting physician's opinion where it was consistent with the medical evidence and findings of the examining physician)).

In this case, the ALJ gave a comprehensive summary of Drs. Pena's and Annis's opinions, assigned them "great weight," and incorporated them into his RFC.[6]   The ALJ also found that their opinions were consistent with Plaintiff's statements in that they informed the level of activity that Plaintiff could perform on a daily basis.   [Tr. 30].   Plaintiff nonetheless complains that the ALJ should have gone further and incorporated every limitation that they identified, including their equivocal statements that Plaintiff "may" have, certain difficulties carrying out tasks, maintaining attention, and responding to criticism.   But, these statements do not establish any restrictions that exceed the ALJ's RFC finding.   That is, even if the ALJ incorporated every component of Drs. Pena's and Annis's opinions, there is no evidence that these statements would support a different RFC determination.

---

[6]   The ALJ accommodated these opinions by limiting Plaintiff to only unskilled, simple, routine, and repetitive tasks, low-stress work, and occasional contact with others.

They only provide additional *possibilities* on what Plaintiff can and cannot do.   It is therefore inconsequential that the ALJ did not assign Drs. Pena's and Annis's opinions controlling weight because the RFC would have remained unchanged.   As such, Plaintiff has failed to show that the weight assigned to two state agency consultants undermined the ALJ's RFC determination.

### D.   *Substantial Evidence Does Not Support the Weight Assigned to the Medical Opinions*

Finally, Plaintiff claims that the ALJ erred when he failed to assess the medical opinions in the record.   An ALJ evaluates several factors when determining how much weight to assign a medical opinion, including: (1) whether the physician has examined the claimant, (2) the length, nature, and extent of a treating physician's relationship with the claimant, (3) the medical evidence and explanation supporting the physician's opinion, (4) how consistent the physician's "opinion is with the record as a whole," and (5) the physician's specialization.   20 C.F.R. §§ 404.1527(c), 416.927(c).   These factors apply to both examining and non-examining doctors.   *See id*.  Absent good cause, the ALJ must give a treating physician's[7] opinion substantial or considerable weight.   *See id*. (noting that more weight is generally given to opinions from treating sources); *see also Winschel*, 631 F.3d at 1179.

Good cause exists when the "(1) treating physician's opinion was not bolstered

---

[7]     A treating source is defined as the claimant's "own physician . . . who provides [the claimant] . . . with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]."   20 C.F.R. § 404.1502.

by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1241. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* Furthermore, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefore. *See Winschel*, 631 F.3d at 1179 (reiterating that without a statement from the ALJ, a reviewing court would be unable to determine whether the disability decision was rational and supported by substantial evidence). The opinion of a one-time examiner is not entitled to deference or special consideration. *See Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 878 (11th Cir. 2013) ("[T]he ALJ was not required to defer to Dr. Vrochopoulos's opinion since he was a psychologist who only examined Denomme on a single occasion and did not treat her.") (citing *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987)).

The opinion of a non-examining physician is entitled to little weight when it contradicts the opinion of an examining physician. *See Lamb v. Bowen,* 847 F.2d 698, 703 (11th Cir. 1988). However, "[w]here a non-examining physician's report includes information that is not contained in the examining physicians' reports, but does not contradict the examining physicians' reports, the ALJ does not err in relying on the non-examining physician's report to the extent it contains non-contradictory information." *Kemp v. Astrue*, 308 F. App'x 423, 427 (11th Cir. 2009) (citing *Edwards v. Sullivan,* 937 F.2d 580, 584–85 (11th Cir. 1991)). The weight to be given a non-examining physician's opinion depends, among other things, on the

21

extent to which it is supported by clinical findings and is consistent with other evidence. *See* 20 C.F.R. § 404.1527(d)(3)–(4); *see also Crawford,* 363 F.3d at 1160 (holding that the ALJ did not err in relying on consulting physician's opinion where it was consistent with medical evidence and findings of the examining physician).   The more consistent a physician's opinion is with the record as a whole, the more weight an ALJ will place on that opinion.  *See* 20 C.F.R. § 404.1527(d)(4).

Procedurally, an ALJ is "required to state with particularity the weight he [gives] the different medical opinions and the reasons therefor." *Sharfarz v. Bowen,* 825 F.2d 278, 279 (11th Cir. 1987).   Absent such a statement, a reviewing court cannot determine whether the ultimate decision is supported by substantial evidence.  *See Hudson v. Heckler,* 755 F.2d 781, 786 (11th Cir. 1985) (citation omitted).   However, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision" enables the court "to conclude that the ALJ considered [the claimant's] medical condition as a whole." *See Dyer*, 395 F.3d at 1211.   This means that if an ALJ makes clear that he or she considered a physician's opinion, and that the findings were consistent with the opinion, then there is no harmful error.  *Colon v. Colvin*, 600 F. App'x 867, 870 (11th Cir. 2016).   In other words, "even if the ALJ erroneously failed to explicitly assign weight to and discuss every aspect of [a doctor's] opinion, this error [is] harmless because it is still clear that the ALJ's rejection of the portions of [the doctor's] opinion that are inconsistent with the ALJ's ultimate conclusion was based on substantive evidence." *Newberry v. Comm'r, Soc. Sec. Admin.*, 572 F. App'x 671,

672 (11th Cir. 2014).  With these principles in mind, we turn to the arguments presented.

Plaintiff raises two related concerns with how the ALJ weighed the medical opinion evidence.  Plaintiff argues that the ALJ failed to show good cause in assigning the opinions of two treating physicians – namely Drs. Jemmali and Joseph – little weight.  Specifically, Plaintiff takes issue with the reasons that the ALJ provided for discrediting their opinions because they were neither inconsistent with the record as a whole, nor did their use of a checked box form provide a sufficient reason to discount their opinions.  Plaintiff relies, in part, on the Eleventh Circuit's recent decision in *Schink v. Comm'r of Soc. Sec.*, where the Court found that the use of a "check box" form "is not a basis, in and of itself, to discount [an opinion] as conclusory."  935 F.3d 1245, 1262 (11th Cir. 2019).  Plaintiff claims that, even if *Schink* were ignored, the use of the check-box form in this case would nonetheless undermine the ALJ's decision because he assigned "great weight" to the opinions of the state agency psychologists and, at the same time, assigned "little weight" to Dr. Jemmali – despite the use of substantially similar forms.  Plaintiff also contends that the ALJ failed to even reference her long-time treatment relationship with Dr. Turner who found that Plaintiff was severely depressed, anxious, hopeless, and disabled.  For these reasons, Plaintiff maintains that the ALJ's decision lacks substantial evidence because he failed to set forth good cause in discrediting the opinions of several treating physicians.

We need not even consider Plaintiff's arguments with respect to Drs. Jemmali

23

and Joseph because the ALJ failed to mention, at any point in his decision, Plaintiff's treating psychiatrist, Dr. Turner.   Between January 2012 and May 2015, Dr. Turner treated Plaintiff on at least 17 different occasions.   The ALJ's "lack of explanation for failing to address a treating physician's opinion is particularly troublesome when [a] physician was the claimant's long-time treating physician." *Nyberg v. Comm'r of Soc. Sec.,* 179 F. App'x 589, 591 (11th Cir. 2006) (citation and quotations omitted). The Government argues that Dr. Turner's omission in the ALJ's decision is inconsequential because Dr. Turner's treatment notes are merely reflective of Plaintiff's self-reported symptoms as opposed to any medical opinions.   The problem with this argument is that the Government is merely reading that inference into the record with no guarantee if it is actually correct.   Indeed, the Government's position appears even weaker after the Court took an independent review of Dr. Turner's treatment notes because at no point does it state that Dr. Turner's notations are merely a reflection of Plaintiff's self-reported symptoms.   For all we know, these treatment notes include an abundance of Dr. Turner's medical opinions.

The Government then attempts to undermine Dr. Turner's treatment notes because he opines that Plaintiff was disabled [Tr. 831] and that the ALJ had every right to disregard this assessment because that determination is reserved solely to the Commissioner.   *See* 20 C.F.R. § 404.1527 ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability . . . A statement by a medical source that you are 'disabled' or 'unable to work' does not mean that we will determine that you are disabled.").   While the

Government may be correct on that point, the Government has missed the forest for the trees because Dr. Turner's treatment notes go well beyond a simple notation that Plaintiff is disabled.   The notes also state that Plaintiff is depressed, anxious, hopeless, unable to function, and that she suffers from a deteriorating mind.   Dr. Turner also mentions how Plaintiff suffers from constant panic attacks and how she needs help with almost every activity in her daily life.   These other notations – unlike the finding that Plaintiff is disabled – are not a matter solely reserved to the Commissioner.   Instead, they appear to be medical opinions on Plaintiff's mental health that the ALJ completely omitted.[8]

To salvage its argument, the Government suggests that the omission of Dr. Turner's medical opinion constitutes harmless error because it would not alter the ALJ's RFC.   This is equally feeble because – if the ALJ had given Dr. Turner's opinion "great weight" or even "some weight" – this could have further reduced the number of jobs available in the national economy that Plaintiff could have performed at step five of the sequential process.   That is, without any consideration of Dr. Turner's treatment records and the medical opinions found therein, the ALJ's determination that Plaintiff could perform the occupations of a general office assistant and a mail clerk lacks substantial evidence.   "Thus, we cannot say that the failure to address Dr. [Turner's] opinion was harmless without re-weighing the

---

[8]    It is, of course, difficult to determine conclusively how many of Dr. Turner's treatment notes constitute medical opinions and the weight that should be assigned to each of them.   But, that is not for us to decide.   The ALJ should have performed this task before he issued his unfavorable decision.

evidence and engaging in conjecture that invades the province of the ALJ." *Nyberg v. Comm'r of Soc. Sec.*, 179 F. App'x 589, 592 (11th Cir. 2006) (citing *Moore,* 405 F.3d at 1214 (stating that, where ALJ failed to consider certain factors and indicate their impact on his ultimate conclusion as to the claimant's residual functional capacity, we "[could not] even evaluate the Commissioner's contention that the ALJ's error was harmless"); *Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (remanding where we were "unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so"); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546 (6th Cir. 2004) ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.")).

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other requirements of work.'"), *aff'd*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. Sept. 9,

2010)  ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).   But, there is no link between the ALJ's RFC determination and the medical evidence in this case because there is a glaring omission as to one of Plaintiff's treating physicians.   If anything, the record suggests that Dr. Turner's opinions – if given any considerable weight – would further reduce Plaintiff's RFC and the number of jobs that Plaintiff can perform.

We therefore have no choice but to find that the ALJ committed harmful error because – if the RFC lacks substantial evidence – the ALJ's step five finding is erroneous as to whether Plaintiff can perform a significant number of jobs in the national economy.   Remand is necessary so that the ALJ can consider Dr. Turner's medical opinions, assess the appropriate weight that should be assigned to them, and then re-examine at step five whether there are jobs in the national economy that Plaintiff can perform.   *See Hickel v. Comm'r of Soc. Sec.*, 539 F. App'x 980, 989 (11th Cir. 2013) ("We conclude that a remand is necessary so that the ALJ can reconsider her assessment of Hickel's RFC in light of Dr. Eastridge's opinion on these matters and then re-examine, at steps four and five, whether there is work Hickel can perform."); *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 65 (11th Cir. 2010) (reversing an ALJ decision because the RFC determination lacked substantial evidence).   Accordingly, this case should be remanded to allow the parties to

27

present additional evidence on Plaintiff's alleged disability and to allow the ALJ to render a decision that is fully supported by substantial evidence.   For these reasons, Plaintiff's motion for summary judgment [D.E. 16] should be **GRANTED in part**, Defendant's motion for summary judgment [D.E. 19] should be **DENIED**, and this case should be **REMANDED** for further proceedings.

## IV.   CONCLUSION

Substantial evidence does not support the ALJ's findings as noted in his unfavorable decision.   The ALJ committed harmful error with respect to Plaintiff's RFC that prejudiced Plaintiff at step five of the sequential process.   For the foregoing reasons, Plaintiff's motion for summary judgment [D.E. 16] should be **GRANTED in part**, Defendant's motion for summary judgment [D.E. 19] should be **DENIED**, and this case should be **REMANDED** for further proceedings.

Pursuant to Local Magistrate Rule 4(b) and Fed. R. Civ. P. 73, the parties have fourteen (14) days from service of this Report and Recommendation within which to file written objections, if any, with the District Judge.   Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report.   28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Commissioner of Social Security,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 3rd day of

April, 2020.

/s/ Edwin G. Torres
EDWIN G. TORRES
United States Magistrate Judge